<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STACK STACKHOUSE, | Civil Action No. 11-7554 (DMC) |
| Plaintiff, | |
| v. | OPINION |
| GARY M. LANIGAN, et al., | |
| Defendants. | |

**APPEARANCES**:

> STACK STACKHOUSE
> 299 Schley Street
> Newark, NJ   07112
> Plaintiff *Pro Se*

<u>**CAVANAUGH, District Judge**</u>:

Stack Stackhouse, also known as Stack Williams, seeks to file a Complaint asserting

violation of rights under 42 U.S.C. § 1983 without prepayment of the filing fee.   This Court will

grant Plaintiff's application to proceed *in forma pauperis* and direct the Clerk to file the Complaint

without prepayment of the filing fee.[1]   Having screened the Complaint in accordance with the

---

[1] At the time he signed the Complaint, Stackhouse was a "prisoner" under 28 U.S.C. § 1915(h), as he was confined at New Jersey State Prison.   By Order entered January 11, 2012, this Court administratively terminated the case because Stackhouse did not prepay the filing fee or submit an application to proceed *in forma pauperis*.   (Order, ECF No. 2.)   The Order notified Stackhouse that this Court would reopen the case if, within 30 days, he prepaid the $350 filing fee or submitted an application to proceed *in forma pauperis*.   This Order was returned to the Clerk's Office as undeliverable, (ECF No. 3), and Stackhouse did not prepay the filing fee or submit an application to proceed *in forma pauperis* within the 30-day time limit.   On May 31, 2012, Stackhouse filed a notice of change of address stating that he was incarcerated at Essex County Correctional Facility. (ECF No. 4.)   Finally, on August 27, 2012, well beyond the 30-day time limit that expired on February 11, 2012, the Clerk received an *in forma pauperis* application from Stackhouse.

requirements of 28 U.S.C. § 1915(e)(2)(B), this Court will dismiss the federal claims raised in the Complaint and decline to exercise supplemental jurisdiction over claims arising under state law.

## I. BACKGROUND

Stack Stackhouse brings this Complaint for violation of his constitutional rights against 19 defendants, including the Essex County Prosecutor's Office; prosecutors Paula Dow, Carolyn Murray, and Linda Childswift; the Essex County Public Defender's Office; Public Defenders Donna Scocozza, Michael Marucci and John Heggerty; Cory Booker, the former Mayor of Newark; Robert L. Bowser, Mayor of East Orange; and eight police officers and investigators employed by Newark, East Orange or the Essex County Prosecutor. The claims raised in the Complaint arise from Stackhouse's arrest and indictment for a carjacking that occurred in East Orange on February 11, 2006; his indictment for a robbery that occurred in Newark on December 16, 2005; and his state criminal prosecution and joint trial on those indictments. In reciting the facts, this Court will describe the allegations in the Complaint and the Supplemental Complaint, and will take judicial notice of the electronically available opinion issued on December 17, 2010, by the New Jersey Superior Court, Appellate Division, which reversed Plaintiff's convictions and remanded the cases to the Law Division for separate trials on the two indictments. *See State v. Williams*, No. A-3648-07T4, 2010 WL 5348776 (N.J. Super., App. Div., Dec. 17, 2010), *certif. denied*, 206 N.J. 65 (2011) (table).[2]

According to the Appellate Division, on December 16, 2005, a man wearing a stocking or mask over his face walked into the Newark Office of victim A.R. and took her car keys and purse; on February 11, 2006, a man carjacked a car in front of a store in East Orange that was occupied by

---

[2] Plaintiff was sentenced under the name Stack Williams. *See Stackhouse a/k/a Williams v. City of Newark,* Civ. No. 07-4403 (DMC) letter at ECF No. 1-2 (D.N.J. Sept. 14, 2007).

victims L.C. and L.H. *See Williams,* 2010 WL 5348776 at *1. "Later that night, East Orange

police located the car, conducted surveillance, and observed [Plaintiff] and his girlfriend get into

the car." *Id.* The police attempted to speak with Plaintiff, who attempted to flee, but was

detained, handcuffed, and arrested. *Id.* His "girlfriend consented to a search of an apartment she

shared with [him] and the police located A.R.'s belongings in it." *Id.* Plaintiff was indicted for

carjacking and other charges concerning the East Orange carjacking incident on February 11,

2006; he was also separately indicted for robbery and other charges arising from the December 16,

2005, Newark robbery. *Id.* The trial judge granted the State's motion for a joint trial, and on

October 26, 2007, a jury found Plaintiff guilty of all charges in both indictments, with the

exception of two aggravated assault counts in the carjacking indictment and a hindering charge.

*Id.* at *2. On December 14, 2007, the Law Division judge sentenced Plaintiff to an aggregate

35-year sentence, with an 85% period of parole ineligibility. *Id.* Plaintiff appealed, and on

December 17, 2010, the Appellate Division of the Superior Court of New Jersey held that the trial

judge had abused his discretion by conducting a joint trial. *See Williams,* 2010 WL 5348776 at

*4. The Appellate Division reversed the convictions on both indictments and remanded for

separate trials. *Id.* The State petitioned for certification, and by order entered May 12, 2011, the

New Jersey Supreme Court denied certification. *See State v. Williams,* 206 N.J. 65 (2011) (table).

   Under the mailbox rule, Plaintiff appears to have filed the Complaint in the instant case on

December 19, 2011.[3] Plaintiff asserts the following facts, which this Court will regard as true for

the purposes of this review. Plaintiff asserts that on February 11, 2006, as he was walking on

Freeman Avenue in East Orange, officers jumped out of a vehicle, tackled him to the ground, and

arrested him for carjacking. (Complaint, ECF No. 1 at 3-4.) He alleges that defendant Lt.

_____

[3] The cover letter accompanying the Complaint is dated December 19, 2011. (ECF No. 1-1.)

Robinson searched Plaintiff's apartment on the basis of a consent form signed by Carla Robinson, his girlfriend, who was with him at the time of his arrest. *Id.* Plaintiff asserts that, according to the police report, Lt. Robinson and the other officers who searched the apartment found items belonging to the carjacking victims and to A.R., the victim of the Newark robbery. *Id.* Plaintiff asserts that on February 16, 2008, defendant Richard Warren, a Newark police officer, charged Plaintiff in the robbery of A.R., even though A.R. had repeatedly informed Newark police officers that she did not see the robber's face, since he was wearing a ski mask. *Id.* at p. 5. Plaintiff alleges that he was separately indicted for the Newark robbery and the East Orange carjacking, even though he did not fit the description of the carjacker that was given to police by L.H. and L.C., and A.R. could not identify him. *Id.*

Plaintiff alleges that in May 2007, he wrote letters to then Newark Mayor Cory Booker, East Orange Mayor Bowser, and his Public Defender Scocozza, which letters included exculpatory evidence; but defendants Booker and Bowser ignored his letters and took no action to help Plaintiff. *Id.* at 6. Plaintiff asserts that in July 2007, he sent a letter to Paula Dow, then the Essex County Prosecutor, asking her to investigate, but "Dow ignored all the facts and evidence to both cases and had defendant [Assistant Prosecutor] Childswift offer the plaintiff ten years . . . to plea[d] guilty to the East Orange case and they would drop the Newark case[, b]ut if the plaintiff took both cases to trial and was convicted they (the prosecutors) would seek life in prison." *Id.* at p. 7.

Plaintiff asserts that, during his trial in October 2007, Dow and Childswift presented perjured testimony from defendant Gilmore, an investigator with the prosecutor's office, defendant Koundry, an East Orange Police Officer, and defendant Mendez, an East Orange officer.

*Id.* at pp. 7-9.   He alleges that Koundry falsely testified that that he saw Plaintiff get into the carjacked vehicle, and that Mendez falsely testified that he took the carjacking victims out of the police car to make an identification of Plaintiff.   *Id.*   Plaintiff asserts that prosecutors Dow and Childswift, together with Public Defender Scocozza and the trial judge, "willfully, deliberately and knowingly participated in the orchestrated conspiratorial conduct to cause the plaintiff malice, to maliciously prosecute and wrongfully convict and sentence the plaintiff to thirty five years in prison." *Id.* at p. 10.

Plaintiff asserts that, after the Appellate Division reversed his convictions and remanded these indictments, he asked Public Defender Marucci to assign another attorney, and "Marucci deliberately reassigned another public defender to the plaintiff that was wors[e] th[a]n the first and second public defender[s]."   (Complaint, ECF No. 1 at 11.)   Plaintiff alleges that defendant Heggerty, his new Public Defender, failed to file motions requested by Plaintiff, and in August 2011, Plaintiff filed *pro se* motions to for a speedy trial or to dismiss both indictments.   *Id.* at 12. "Despite the plaintiff submitting overwhelming exculpatory evidence to both cases, defendant [Assistant Prosecutor] Murray still refused to dismiss both indictments against the plaintiff."   *Id.*

Plaintiff contends that defendants violated his constitutional rights under 42 U.S.C. § 1983 in that:   his prosecution was "motivated by race animus," as he is a "black male with a criminal record" (Complaint, ECF No. 1 at 16); the State's witnesses testified falsely; the prosecutors maliciously fabricated evidence; *id.,* defendants conspired to wrongfully arrest, imprison, prosecute and convict Plaintiff; *id.,* defendants Scocozza and Heggerty provided ineffective assistance of counsel; and defendant Marucci did not take effective action to remedy these

constitutional violations by Scocozza and Heggerty, *id.* at 17-18. For relief, Plaintiff seeks

damages and release from custody.[4]

On August 15, 2012, the Clerk received Plaintiff's motion to amend the Complaint.

(Motion, ECF No. 5.) By way of this motion, Plaintiff seeks to add another defendant – Anthony

F. Ambrose, Chief of Prosecutors - and to assert facts regarding Ambrose. This Court will

construe this motion as a supplement to the Complaint.[5] Plaintiff asserts that Ambrose is

"responsible for the conduct of all members/prosecutors of the Essex County prosecutor's Office."

*Id.* at 2. Plaintiff asserts that on March 28, 2012, Plaintiff sent Ambrose "irrefutable exculpatory

evidence" consisting of the testimony of defendant Det. Mendez, in which Mendez

"acknowledge[d] the fact that the plaintiff does not match the description of the suspect the victim

described to the police, and the fingerprint and DNA which was taken from the vehicle in question

does not match the plaintiff." *Id.* at 3. Plaintiff further asserts that after a Superior Court hearing

in March 2012, prosecutors asked Plaintiff to plead guilty to the East Orange case and in exchange

for the plea, they would dismiss the Newark case and seek a sentence of six-years time served. *Id.*

Plaintiff asserts that Ambrose is willfully and knowingly allowing prosecutors to wrongfully

prosecute an innocent man.[6] *Id.*

---

[4] As Plaintiff has been released, his request for release is moot. In any event, a claim for release is not cognizable in an action under 42 U.S.C. § 1983. *See Preiser v. Rodriguez,* 411 U.S. 475 (1973).

[5] *See* Fed. R. Civ. P. 15(a)(1)(A) ("A party may amend its pleading once as a matter of course within . . . 21 days after serving it.")

[6] Although Plaintiff is no longer incarcerated, the ultimate dispositions of the East Orange carjacking and the Newark robbery are unclear.

## II.  STANDARD OF REVIEW

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 28 U.S.C. § 1997e.  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding *in forma pauperis.*

"[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive *sua sponte* screening for failure to state a claim[7], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must

---

[7]      "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 Fed. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)).

allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*,

704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

## III.  DISCUSSION

A.  Federal Claims

Section 1983 of Title 42 of the United States Code provides a cause of action for violation

of constitutional rights by a person acting under color of state law.[8]  To recover under § 1983, a

plaintiff must show two elements:  a person deprived him or caused him to be deprived of a right

secured by the Constitution or laws of the United States, and the deprivation was done under color

of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  This Court construes the Complaint, as

supplemented, as attempting to assert the following claims under § 1983:  (1) arrest and search in

violation of the Fourth Amendment; (2) giving and presenting false testimony; (3) unconstitutional

malicious prosecution; (4) racially discriminatory prosecution; and (5) ineffective assistance of

counsel.

As an initial matter, this Court will dismiss the Essex County Prosecutor's Office, the

Essex County Public Defender's Office, and the Newark Police Department as defendants.  A

police department is not a "person" subject to suit under 42 U.S.C. § 1983.  *See Draper v. Darby*

---

[8] The statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory . . . subjects, or causes to
> be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983.

*Tp. Police Dept.*, 777 F. Supp. 2d 850, 856 (E.D. Pa. 2011); *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F. Supp. 808, 825-26 (D.N.J. 1993). To the extent that a Prosecutor's Office and a Public Defender's Office are governmental entities subject to suit under § 1983, these state entities are entitled to absolute immunity under the Eleventh Amendment. *See Coley v. County of Essex*, 462 F.App'x 157, 161 (3d Cir. 2011); *Beightler v. Office of Essex County Prosecutor*, 342 F.App'x 829 832 (3d Cir. 2009).

This Court declines to construe these defendants as Essex County and the City of Newark, entities which are subject to suit under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 688-90 (1978), because the Complaint does not sufficiently plead § 1983 claims against these entities. Specifically, neither the county nor the city can be found liable under § 1983 simply because they employ wrongdoers. *Id.* at 691-92; *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583 (3d Cir. 2003). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. As this Complaint does not "identify a custom or policy," "specify what exactly that custom or policy was," *McTernan v. City of York, PA*, 564 F. 3d 636, 658 (3d Cir. 2009), or assert facts showing a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *Jiminez v. All American Rathskeller, Inc.*, 503 F. 3d 247, 249 (3d Cir. 2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)), it does not plead a claim against Essex County or the City of Newark under the *Iqbal* standard.

This Court will also dismiss former Mayor Cory Booker, Mayor Robert Bowser, and the individual prosecutors named as defendants, that is, Paula Dow, Carolyn Murray, Linda

Childswift, and Anthony Ambrose. The Complaint does not adequately plead § 1983 claims against the mayors because Plaintiff does not assert facts showing that they were personally involved in violating or causing violation of Plaintiff's constitutional rights.[9] *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs").

To the extent that Plaintiff claims that the individual prosecutors violated his rights under § 1983 by pursuing his indictment and prosecution, with knowledge of his innocence, and presenting false testimony and fabricated evidence, these claims will be dismissed. A prosecutor is absolutely immune from damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process," including initiation of a prosecution and use of false testimony. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *see also Rehberg v. Paulk*, 132 S.Ct. 1497, 1504 (2012); *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009); *Hartman v. Moore*, 547 U.S. 250, 262 n.8 (2006); *Moore v. Middlesex County Prosecutors Office*, 503 F. App'x 108

_____

[9] It follows from the requirement of personal involvement that Mayors Booker and Bower are not liable under § 1983 for the wrongdoing of city employees. Plaintiff states that he wrote to the mayors about his innocence, but they took no action. However, nothing alleged by Plaintiff supports an inference that these mayors were responsible for investigating crimes, carrying out arrests, or pursuing criminal prosecutions. Accordingly, these allegations do not show that the mayors were involved in violating his rights.

(3d Cir. 2012). This Court will now consider whether Plaintiff adequately pleads § 1983 claims against the remaining individual defendants, *i.e.,* the police officers, investigators, and public defenders.

(1) Fourth Amendment Arrest and Search

Plaintiff contends that his arrest on February 11, 2006, and the search of his apartment on that date violated the Fourth Amendment. New Jersey's two-year limitations period on personal injury actions, N.J. STAT. ANN. 2A:14-2, applies to Plaintiff's civil rights claims under § 1983. *See Woodyard v. County of Essex,* 514 F.App'x 177, 183 (3d Cir. 2013); *Dique v. N.J. State Police,* 603 F.3d 181, 185 (3d Cir. 2010); *Montgomery v. DeSimone,* 159 F.3d 120, 126 n.4 (3d Cir. 1998). The statute of limitations on a Fourth Amendment claim for unreasonable search accrues at the time of the search, *see Voneida v. Stoehr,* 512 F.App'x 219, 221 (3d Cir. 2013); *Woodson v. Payton,* 503 F.App'x 110, 112 (3d Cir. 2012), and the limitations period for claims of unconstitutional arrest and imprisonment based on arrest accrues when the arrestee becomes detained pursuant to legal process, *i.e.,* when he is bound over by a judge or arraigned on charges. *See Wallace v. Kato,* 549 U.S. 384, 389-90 (2007); *Walters v. Muhlenburg Tp. Police Dept.,* C.A. No. 13-2166, 2013 WL 4517255 (3d Cir. Aug. 27, 2013); *Montgomery,* 159 F.3d at 126. Since Plaintiff did not file his Complaint in this action until December 19, 2011, more than two years after the search and his arraignment in 2006, his Fourth Amendment arrest and search claims are time barred.[10]

---

[10] Moreover, according to the facts found by the Appellate Division, which Plaintiff disputes, the police did not violate the Fourth Amendment. "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre,* 700 F.3d 675, 680 (3d Cir. 2012); *see also Albright v. Oliver,* 510 U.S. 266, 274-75 (1994); *see also Virginia v. Moore,* 553 U.S. 164, 171 (2008) ("[W]hen an officer has probable cause to believe a person committed even a minor

(2) False Testimony

Plaintiff's § 1983 claims against certain defendants for testifying falsely during his trial will be dismissed because a witness who testifies (falsely) in a judicial proceeding has absolute immunity from any § 1983 claim based on the witness's testimony. *See Rehberg*, 132 S.Ct. at 1506; *Briscoe v. LaHue*, 460 U.S. 325, 332-33 (1983).

(3) Malicious Prosecution

To state a claim for malicious prosecution brought under § 1983, a plaintiff must satisfy each of the following elements: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (internal quotation marks omitted). The favorable termination requirement serves "to avoid 'the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Id.* at 187 (citation omitted). The Third Circuit has "held that a prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element." *Id.*

---

crime . . . the balancing of private and public interests is not in doubt [and t]he arrest is constitutionally reasonable."). According to the facts found by the Appellate Division, it would appear that the police had probable cause to arrest Plaintiff on February 11, 2006, when they observed him and his girlfriend getting into the carjacked car and, when they tried to talk to him, Plaintiff "attempted to flee, and punched and kicked the officers." *Williams,* 2010 WL 5348776 at *1.

Without considering the other elements, this Court will dismiss the malicious prosecution claim because Plaintiff's allegations do not show that either indictment terminated in his favor. To be sure, in 2010 the Appellate Division reversed Plaintiff's convictions on these indictments. *See Williams,* 2010 WL 5348776. But the reversals were not favorable terminations because they were based solely on the ground that the trial judge abused his discretion in joining the trial of the East Orange carjacking and the Newark robbery. Plaintiff's Supplemental Complaint does not state facts showing if or how either criminal prosecution was ultimately resolved. Because Plaintiff does not allege facts showing that his criminal case was disposed of in a way that indicates his innocence, he has not stated a malicious prosecution claim under § 1983. *See Morris v. Verniero,* 453 F.App'x 243 (3d Cir. 2011) (holding that Attorney General's decision to dismiss criminal prosecution against Morris was not a favorable termination where the New Jersey State Police were under scrutiny for using racial profiling in traffic stops and the Attorney General stated that it was too difficult to discern whether this case involved intentional targeting of minorities where other drug courier profile-related factors existed to justify the stop on the turnpike); *Donahue v. Gavin,* 280 F.3d 371 (3d Cir. 2002) (holding that a prosecutor's decision to dismiss a case in the interest of judicial economy did not constitute a favorable termination).

(4) Racially Discriminatory Prosecution

"[T]he conscious exercise of some selectivity in enforcement [of a criminal law] is not in itself a federal constitutional violation." *Oyler v. Boles,* 368 U.S. 448, 456 (1962). "A decision to prosecute is selective and violates the right to equal protection when it is made on a discriminatory basis with an improper motive." *Morris,* 453 F.App'x at 246 (quoting *United States v. Schoolcraft,* 879 F.2d 64, 68 (3d Cir. 1989)). To show that selective prosecution is a

violation of equal protection, a plaintiff must show two elements: (1) "persons similarly situated have not been prosecuted," and (2) the decision to prosecute was "made on the basis of an unjustifiable standard, such as race, religion, or other arbitrary classification." *Government of Virgin Islands v. Harrigan,* 791 F.2d 34, 36 (3d Cir. 1986) (citations and internal quotation marks omitted); *see also PG Pub. Co. v. Aichele,* 705 F.3d 91, 115 (3d Cir. 2013) ("[T]o maintain an equal protection claim of this sort, [plaintiff] must provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect.") (quoting *Jewish Home of E. Pa. v. Ctrs. for Medicare and Medicaid Servs.,* 693 F.3d 359, 363 (3d Cir. 2012)); *Desi's Pizza, Inc. v. City of Wilkes-Barre,* 321 F.3d 411, 425 (3d Cir. 2003).

In this case, Plaintiff's equal protection claim fails because he does not assert facts establishing either element, *i.e.,* he does not assert facts showing that similarly situated non-African Americans were not prosecuted or that the decision to prosecute him was made on basis of racial animus. *See Morris,* 453 F.App'x at 246; *Suber v. Guinta,* 927 F.Supp.2d 184 (E.D. Pa. 2013); *Riley v. New Jersey,* Civ. No. 12-3573 (RBK), 2012 WL 4845748 (D.N.J. Oct. 10, 2012); *cf. PG Pub. Co.,* 705 F.3d at 115. He merely makes the conclusory statement that he was discriminated against on the basis of his race.

(5) Ineffective Assistance of Counsel

Plaintiff also sues two public defenders for providing ineffective representation, and he sues their supervisor, Michael Marucci, for assigning attorneys who were ineffective. The § 1983 claims against Scocozza and Heggerty fail because "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to defendant in a criminal proceeding." *See Polk County v. Dodson,* 454 U.S. 312, 325 (1981); *Chambers v. Hughes,* ---

14

F.App'x ___, 2013 WL 3870777 (3d Cir. July 29, 2013); *Murphy v. Bloom,* 443 F.App'x 668 (3d Cir. 2011). To the extent that the supervisor was acting under color of state law, the claims against the supervisor fail because § 1983 will not support a claim based on a *respondeat superior* theory of liability, and a general allegation of administrative negligence fails to state a constitutional claim. *See Polk County,* 454 U.S. at 326; *Rizzo v. Goode,* 423 U.S. 362, 370-77 (1976).

There is one further point that requires consideration. Stackhouse asserts that Scocozza conspired with the prosecutors and judge to secure his wrongful conviction. He alleges that, during his trial, he repeatedly asked Scocozza to locate, and to presumably call as a witness, Carla Robinson (who had given the police consent to search Plaintiff's apartment), but Scocozza "said nothing and went on as if nothing was wrong," even though the police "could not prove that Carla Robinson lived at said residence, nor was she authorized to sign the consent to search form." (Complaint, ECF No. 1 at 9.) Plaintiff accordingly concludes that Scocozza, together with the prosecutors and the judge, "deliberately and knowingly participated in the orchestrated conspiratorial conduct to cause the plaintiff malice, to maliciously prosecute and wrongfully convict and sentence the plaintiff to thirty five years in prison." *Id.* at 10.

To be sure, a public defender who conspires with the judge and the prosecutor to secure her client's conviction is acting under color of state law. *See Tower v. Glover,* 467 U.S. 914, 920 (1984). However, "a bare assertion of conspiracy will not suffice" and, without more, "a conclusory allegation of agreement at some unidentified point does not supply facts" adequate to state a conspiracy claim under § 1983. *Twombly,* 550 U.S. at 556. As the Supreme Court explained, "terms like 'conspiracy,' or even 'agreement,' are border-line: they might well be

sufficient in conjunction with a more specific allegation – for example, identifying a written agreement or even a basis for inferring a tacit agreement, . . . but a court is not required to accept such terms as a sufficient basis for a complaint." *Id.* at 557 (quoting *DM Research, Inc. v. College of Am. Pathologists,* 170 F.3d 53, 56 (1st Cir. 1999)). In this case, Plaintiff's Complaint, as supplemented, sets forth no facts to support his conclusion that Scocozza conspired with the judge or the prosecutor to obtain his conviction. Accordingly, Plaintiff does not plead facts showing that Scocozza acted under color of state law, and the § 1983 claims against her will be dismissed on that basis.

Based on the foregoing, this Court will dismiss the federal claims raised in the Complaint against all defendants for failure to state a claim upon which relief may be granted.

B.   Amendment of the Complaint

It is conceivable that Stackhouse may be able to assert facts stating a malicious prosecution or racially discriminatory prosecution claim § 1983 against a person who is not absolutely immune. This Court will accordingly dismiss the federal claims in the Complaint with leave to file an amended complaint asserting a cognizable claim under § 1983 against a non-immune defendant for malicious prosecution or racially discriminatory prosecution.[11] *See DelRio-Mocci v. Connolly Properties Inc.,* 672 F.3d 241, 251 (3d Cir. 2012); *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000).

---

[11] Plaintiff should note that an amended complaint supersedes prior complaints. *See Snyder v. Pascack Valley Hosp.,* 303 F.3d 271, 276 (3d Cir. 2003). Accordingly, an amended complaint must name all defendants, assert facts stating a claim against each defendant, and must otherwise be complete in and of itself.

C. Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). "A district court can decline to exercise supplemental jurisdiction in several circumstances, including a situation where 'the district court has dismissed all claims over which it has original jurisdiction,' as in this case." *Trinity Industries, Inc. v. Chicago Bridge & Iron Co.*, ___ F.3d ___, 2013 WL 4418534 *2 (3d Cir. Aug. 20, 2013) (quoting 28 U.S.C. § 1367(c)(3)). Here, the Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation and declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3). *See Taggart v. Norwest Mortg. Inc.*, ___ F.App'x ___, 2013 WL 4873459 at *2 (3d Cir. Sept. 13, 2013)..[12]

## IV. CONCLUSION

Based on the foregoing, this Court will grant Plaintiff's application to proceed *in forma pauperis*, dismiss the federal claims in the Complaint, and decline to exercise supplemental jurisdiction.

DENNIS M. CAVANAUGH, U.S.D.J.

DATED: _____, 2013

---

[12] In the event Plaintiff files an amended complaint which includes claims arising under state law, this Court will again consider whether to exercise supplemental jurisdiction over such state law claims.